UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 00-6018-CIV-GRAHAM
MAGISTRATE JUDGE TURNOFF

VICTOR L. ANDERSON, CRISPINA ASHBY,
JAMIE ELLIS, GEORGE RODRIGUEZ
and HAYES D. SULLIVAN,

    Plaintiffs,

vs.

BARTON PROTECTIVE SERVICES INCORPORATED,

    Defendant.
_____/

## AFFIDAVIT OF CHERRY FAULK

1.    I was employed by Barton Protective Services Incorporated from June 13, 1999, until on or after July 22, 2000. I worked as a Security Officer at several different posts.

2.    Throughout my employment, I usually worked in excess of 40 hours per week. I was paid at one and one-half times my regular hourly rate for those hours over 40 per week which I was allowed to record on my time sheets.

3.    However, I was not allowed to record all of the time I worked. In particular, when I was required to be present at my assigned post before my scheduled shift each day, or to work later than the end of my shift, my time sheets would show the scheduled starting time and quitting time, but not the actual hours I worked. Barton calculated my pay based upon these falsified time sheets.



Law Offices of Donald R. McCoy • 420 N.E. Third St., Fort Lauderdale, FL 33301 • (954) 522-4211

4.   When I started with Barton Protective Services, in June, 1999, I was assigned to work at the Sun Microsystem facility in Fort Lauderdale. I was usually scheduled for a shift which began at 3:00 p.m. I had to come in fifteen minutes before starting time. The officer who relieved me was likewise required to come in fifteen minutes before the end of my shift and usually did so. I often would leave shortly after my relief arrived. The time balanced out and I was usually paid for the correct number of hours I worked at this post.

5.   In October, 1999, I was transferred to a post at a large residential community, Mizner Grand. At this post, I was also required to come in at least fifteen minutes before my scheduled starting time each day. All of the security guards who worked at that post were required to do so. There were written post orders to this effect.

6.   Because of this requirement, I always came to work from 15 minutes to one-half hour early. I was always at my post at least 15 minutes prior to the start of my shift and sometimes as much as 20 minutes prior to the start of my shift.

7.   Even though my relief was also supposed to arrive 15 minutes early, he or she never did come in on time. Therefore I was not allowed to leave early. I had to stay until at least the end of my shift. There were many times, in fact, when I could not leave at the exact time my shift ended, usually because my relief did not show up.

8.   My supervisor did not allow me to record any of the additional time and I was not paid for it. I tried writing down the correct time but even when I did so I was only paid for the scheduled hours, not the additional time. I worked

at least five (5) days each week. I estimate that Barton failed to pay me for at least two and one-half hours of overtime work each week.

9. My regular hourly rate at that time was $9.00 per hour. At my overtime rate ($13.50) the company shorted me by at least $33.75 per week.

10. I was transferred to another post, at Lucent Technology for approximately six weeks. During that time, my hourly rate was reduced to $8.00 per hour. At that post, we were not required to arrive fifteen minutes early.

11. I returned to Mizner Grand where I was kept at the $8.00 per hour rate. I asked for a raise when the total amount of time I had worked at Mizner Grand was six months, not counting the six weeks I worked at Lucent. My supervisor, a white male, told me he could not approve a raise in pay for me because I did not speak "proper English." I am from Jamaica and I believe he was referring to the fact that I speak English with an accent.

12. I complained to Linda Ashby and also to one of the captains that I was being denied a raise because of my accent. Because of my complaint, I was transferred to another residential post, Townsend Place in Boca Raton, on April 27, 2000.

13. At Townsend Place I usually worked the 7 to 3 shift. I was also required to come in fifteen minutes early each day. I could never leave at the end of my shift because there was no one there to relieve me. I worked at least thirty minutes each day for which I was not paid. I could not record this additional time on my time sheets. I gave two weeks written notice on July 1, 2000. When my two weeks were up, I tried to leave. My supervisor asked me to

work three additional days. I worked the additional days as a favor to him. When I received my paycheck for those final three days my hourly rate was reduced to the minimum wage, $5.15 per hour. I refused to accept this paycheck.

14. I worked the same additional thirty minutes or more per day for those three days, as well, for which I was not paid at all.

_____
Cherry Faulk


THE FOREGOING AFFIDAVIT was acknowledged before me this 13th day of October, 2000 by Cherry Faulk, who produced a Florida Drivers License F420-103-59-781-0 as identification and who did take an oath.

_____
Notary Public, State of Florida at Large

Rosemarie S McCoy
My Commission CC656898
Expires June 18, 2001